**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

DEOZ MILLER-HARRIS,

              Plaintiff,

        -v-                                     9:22-CV-1363 (AJB/DJS)

THE COUNTY OF ONONDAGA *et al.*,

              Defendants.
_____

**Hon. Anthony Brindisi, U.S. District Judge:**

**<u>ORDER on MOTIONS *IN LIMINE*</u>**

## I.    INTRODUCTION

On December 15, 2022, plaintiff Deoz Miller-Harris ("plaintiff"), formerly a detainee at the Onondaga County Justice Center ("OCJC"), filed this 42 U.S.C. § 1983 action alleging that defendants Onondaga County (the "County") sheriff's office employees Dustin Saddock, Ryan Whitmore, Anthony Tineo, Thomas Fodaro, Vedad Hujdur, and James Quigley (the "individual defendants"), violated his rights under the Fourteenth Amendment and related state law by using excessive force against him on September 16, 2021, and that the County negligently supervised, trained, and retained the individual defendants.

The case is set for a jury trial on Monday, November 3, 2025 at 9:30 a.m. in Utica, New York. In accordance with a pre-trial scheduling order, the parties have moved *in limine* for pre-trial relief. Dkt. Nos. 115, 122. After those motions were briefed, Dkt. Nos. 124, 126, plaintiff filed a supplemental motion *in limine*, Dkt. No. 132. The Court heard argument from the parties at the final pre-trial conference on October 28, 2025.

## II.    LEGAL STANDARD

As a general matter, "relevant" evidence is admissible at trial unless it is excluded by the Constitution, some federal statute, or the Federal Rules of Evidence. FED. R. EVID. 402. Under the Federal Rules of Evidence, evidence is considered "relevant" if: (a) "it has any tendency to make a fact more or less probable than it would be without the evidence"; and (b) "the fact is of consequence in determining the action." FED. R. EVID. 401.

This relevance threshold is fairly low. *See, e.g.*, *United States v. Southland Corp.*, 760 F.3d 1366, 1375 (2d Cir. 1985). However, "relevant" evidence may still be excluded if "its probative value is substantially outweighed by a danger" of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403.

Under the Federal Rules of Evidence, evidence is considered "prejudicial" if it involves "some adverse effect . . . beyond tending to prove the fact or issue that justified its admission into evidence." *United States v. Gelzer*, 50 F.3d 1133, 1139 (2d Cir. 1995) (citation omitted); *see also Dollar v. Long Mfg., N.C., Inc.*, 561 F.2d 613, 618 (5th Cir. 1977) ("Virtually all evidence is prejudicial or it isn't material. The prejudice must be 'unfair.'").[1]

The purpose of a motion *in limine* is to streamline the trial by ruling on the admissibility of forecasted evidence or the permissibility of anticipated lines of argument. *See, e.g.*, *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984); *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996)

---

[1] "District courts analyzing evidence under Rule 403 should consider whether a limiting instruction will reduce the unduly prejudicial effect of the evidence so that it may be admitted." *Walker v. Schult*, 365 F. Supp. 3d 266, 275 (N.D.N.Y. 2019) (cleaned up). "As the Supreme Court has recognized, limiting instructions are often sufficient to cure any risk of prejudice." *United States v. Walker*, 142 F.3d 103, 110 (2d Cir. 1998) (citing *Zafiro v. United States*, 560 U.S. 534, 539 (1993)).

(reducing interruptions); *United States v. Wager*, 651 F. Supp. 3d 594, 598 n.1 (N.D.N.Y. 2023) (applying to arguments).

"Evidence should be excluded on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds." *Walker*, 365 F. Supp. 3d at 275 (citation omitted). "The movant has the burden of establishing that the evidence is not admissible for any purpose." *Id*. "The trial judge may reserve judgment on a motion *in limine* until trial to ensure the motion is considered in the proper factual context." *Id*. Finally, "[t]he court's ruling regarding a motion *in limine* is subject to change when the case unfolds." *Id*.

## III.    DISCUSSION

Although plaintiff's amended complaint asserts eight causes of action. Dkt. No. 39, the parties' joint pre-trial stipulation has narrowed this case down to: (1) a § 1983 excessive force claim against the individual defendants (first cause of action); (2) a § 1983 failure-to-intervene claim against the individual defendants (third cause of action); (3) state-law assault and battery claims against the individual defendants and the County (fourth and fifth causes of action); and (4) a negligent supervision, training, and retention claim against the County (seventh cause of action). Dkt. No. 107 at 5–6.

During the final pre-trial conference, the parties consented to the dismissal of defendant Thomas Fodaro. The parties also consented to the dismissal of three Doe defendants, who were named in the operative complaint but not identified in discovery. Accordingly, consistent with the stipulation, and based on the parties' representations made on the record, plaintiff's second, sixth, and eighth causes of action, and all of plaintiff's claims against defendant Fodaro and the three Does, will be dismissed.

Plaintiff's principal motion *in limine* asserts thirteen grounds for relief, Dkt. No. 122, and his supplemental motion raises a fourteenth issue, Dkt. No. 132. Defendants, for their part, have only raised a single issue in their principal motion, Dkt. No. 115, but make multiple arguments in opposition to plaintiff's requests that seek competing relief, Dkt. No. 124-3. In cases where the parties' substantive requests for relief overlap, the Court will address those arguments together.

**A. Defendants' Motion** (Dkt. No. 115-2)

Defendants contend that plaintiff should be precluded from offering evidence at trial of "unrelated" use-of-force ("UOF") occurrences involving the individual defendants because this evidence "erroneously and misleadingly" suggests to the jury that defendants "have a propensity to use excessive force against inmates." Dkt. No. 115-2 at 3. According to defendants, the UOF occurrences "are not inmate complaints or disciplinary in nature," but are reports generated by the County Sheriff's Office's UOF Review Committee based on incidents involving the use of force. *Id*.

Defendants state that these documents amount to "10,000+ pages of reports and related memoranda . . . from occurrences spanning several years involving one or more of the named deputies who were members of the Sheriff's Emergency Response Team ("SERT"), and who were thus often involved in 'force' instances given the nature of their post." Dkt. No. 115-2 at 3–4. As defendants explain, "plaintiff's counsel has indicated that they plan to introduce either all of the documents into evidence, and/or a chart containing 'data' derived from the documents." *Id*. at 4.

Defendants argue that this UOF evidence is inadmissible because it is irrelevant to the objective reasonableness of any individual defendant's conduct. Dkt. No. 115-2 at 4. Even if it were otherwise relevant, defendants argue that plaintiff's "data visualization charts," which

purport to summarize this data, actually omit information "which would properly contextualize[ ] the five years' worth of UOF occurrences." *See id*. at 4–5. Thus, in defendants' view, the "only purpose for offering this evidence would be to mislead and prejudice the jury." *Id*. at 6.

In response, plaintiff argues that: (1) the UOF evidence is relevant to his state-law claim against the County, which requires him to prove that the County was on notice that the individual defendants "had a history of using excessive force"; (2) the UOF evidence is relevant to prove the individual defendants' *modus operandi* and to the jury's determination of whether to award punitive damages; and (3) at the very least, he should be able to cross-examine the individual defendants on the specific UOF records that are probative of their credibility. Dkt. No. 126 at 4.

First, plaintiff asserts that the UOF evidence is relevant to his claim against the County for negligent supervision, training, and retention. Plaintiff explains that an employer who "has notice of its employee's propensity to engage in tortious conduct, . . . may become liable for injuries thereafter proximately caused by its negligent supervision and retention." Dkt. No. 126 at 5 (quoting *Moore Charitable Found. v. PJT Partners, Inc.*, 40 N.Y. 3d 150, 157 (N.Y. 2023)).

"Under New York law, in addition to the negligence elements of such a claim, a plaintiff must show: (1) that the tort-feasor and the defendant were in an employee-employer relationship; (2) that the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence; and (3) that the tort was committed on the employer's premises or with the employer's chattels." *Rich v. Fox News Network, LLC*, 939 F.3d 112, 129 (2d Cir. 2019) (cleaned up) (collecting cases).

Measured against this general standard, the UOF evidence might be admissible to show that the County was on notice of the individual defendants' propensity to engage in the tortious conduct that caused plaintiff's injuries. However, as explained at the pre-trial conference, this

claim requires supplemental briefing because the parties' submissions leave it unclear whether the County may be held liable when the alleged misconduct is attributable to sheriff's deputies. *Compare* Dkt. No. 126 at 5–6 (plaintiff's filing treating this as a viable claim without discussing state-specific body of law on county sheriffs), *with* Dkt. No. 124-3 at 32–33 (defendants' filing arguing that this claim is not viable on this fact pattern).

There are several, related issues that would benefit from clarification before trial. As an initial matter, defendant contends that liability for negligent supervision, training, and retention does not attach unless the employee was acting *outside* the scope of his employment. Dkt. No. 124-3 at 32. The case law seems to support this proposition. *See, e.g.*, *Rich*, 939 F.3d at 129–30 (explaining where employee acted within scope of employment "the employer would only be liable vicariously under the theory of *respondeat superior*, and not for negligent supervision or retention" (cleaned up)); *Ben v. United States*, 160 F. Supp. 3d 460, 476 –77 (N.D.N.Y. 2016) (explaining same).

But in this case, plaintiff claims that the individual defendants committed the assault and battery in the course of their duties as sheriff's deputies at OCJC. Even if wrongful, this conduct would be likely to fall within the scope of their employment. *See Rich*, 939 F.3d at 129 ("Under New York law, an employee's tortious acts fall within the scope of his employment if done while the servant was doing his master's work, no matter how irregularly, or with what disregard of instructions."); *but see Rivera v. State*, 34 N.Y.3d 383, 389–91 (N.Y. 2019) (observing that state corrections officers might commit excessive force within scope of employment but concluding that defendants acted outside scope of employment when they maliciously attacked inmate).

Indeed, plaintiff's operative complaint alleges that the individual defendants were acting within the scope of their employment. Dkt. No. 39 ¶¶ 12, 15, 18, 21, 27, 30. Therefore, it seems

that this claim would be more appropriately characterized as a *respondeat superior* claim against the County, since vicarious liability covers conduct within the scope of employment.

But so understood, it is far from clear that the County may be held liable for the alleged conduct of the sheriff's deputies, whether under *respondeat superior* or otherwise. Although an old state constitutional provision no longer bars a county's liability for the acts of the sheriff or his deputies, *Durr v. Slator*, 558 F. Supp. 3d 1, 38 (N.D.N.Y. 2021), courts have held that this state constitutional amendment did not affirmatively impose liability on county governments but merely empowers them to accept responsibility by enacting a local law. *See Camacho v. City of Buffalo*, 2021 WL 9079983, at *6 (W.D.N.Y. Oct. 14, 2021) (explaining history); *Baumeister v. Erie County*, 2024 WL 4362311, at *12 (W.D.N.Y. Sept. 30, 2024) (same).

There is no indication that the County has enacted such a law. But even assuming that the County had accepted responsibility under a local law, defendants have identified additional reasons this claim might not be viable, including but not limited to the potential availability of "governmental function immunity," which can shield municipal entities from liability for certain discretionary acts.[2] *See Flannery v. County of Niagara*, 763 F. Supp. 3d 365, 447–49 (W.D.N.Y. 2025) (suggesting various reasons such a claim might fail against a county sheriff).

Second, plaintiff contends that the UOF evidence is admissible for a non-propensity purpose: to show the individual defendants' *modus operandi*. As plaintiff explains, "the entire

---

[2] Plaintiff might have been able to bring this claim against the sheriff. *See Metcalf v. County of Erie*, 104 N.Y.S.3d 815 (4th Dep't 2019) ("The duty to supervise and train Sheriff's deputies rests with the Sheriff."); *Lichy v. County of Cattaraugus*, 2024 WL 5355586, at *9 (W.D.N.Y. Aug. 8, 2024) (distinguishing between statutory duties of county and sheriff). However, state law appears to limit the sheriff's liability for the acts of his deputies when they are performing "criminal justice functions." *Case v. Anderson*, 2017 WL 3701863, at *24 (S.D.N.Y. Aug. 25, 2017) (summarizing law). Although at least one court has held that "guarding prisoners accused of crime is a criminal, as opposed to a civil function," *Wilson v. Sponable*, 439 N.Y.S.2d 549 (4th Dep't 1981), there may have been a narrow avenue for relief when a plaintiff can show that the sheriff's own negligence led to foreseeable harm to an inmate in his custody, *Pagan v. County of Orange*, 2001 WL 32785, at *4 (S.D.N.Y. Jan. 4, 2001); *but see Ortiz v. Orleans County*, 2022 WL 1242486, at *5 (W.D.N.Y. Mar. 15, 2022).

*modus operandi* of the SERT team is to use physical force on pretrial detainees who allegedly refuse to comply with orders, no matter how mundane the issue."  Dkt. No. 126 at 6–7.  In the alternative, plaintiff claims this evidence is relevant to the punitive damages question.  *Id*. at 7.

The Court reserves decision on this issue pending briefing on the issue of the County's liability.  But the UOF evidence is likely inadmissible under Rule 404(b).  That rule permits a party to use other-act evidence for certain non-propensity purposes.  For instance, "[e]vidence of complaints against police officers may be admissible under FRE 404(b) where the offering party demonstrates that the complaints share 'unusual characteristics' with the conduct at issue so as to 'represent a 'unique scheme.'"  *Nibbs v. Goulart*, 822 F. Supp. 2d 339, 349 (S.D.N.Y. 2011) (quoting *Berkovich v. Hicks*, 922 F.2d 1018, 1023 (2d Cir. 1991)).

However, evidence tending to show that the individual defendants engaged in other uses of force in response to other instances of non-compliance by other detainees at OCJC would not share any of the "unusual characteristics" that would be necessary to show a "unique scheme" or one of the other non-propensity justifications under Rule 404(b).  Even assuming this evidence were otherwise admissible for a non-propensity purpose, there is an extremely high risk that the jury would draw an impermissible propensity inference from this evidence, making the Rule 403 factors point strongly toward exclusion.

Third and finally, plaintiff contends that the Court should permit him to cross-examine the individual defendants with the UOF records pursuant to Rule 608(b), which gives the trial court discretion to permit an inquiry into specific instances of a witness's conduct that bear on his character for truthfulness.  Dkt. No. 126 at 7–8.  According to plaintiff, "there are multiple instances within the UOF reports where the defendant officers' veracity when it comes to

reporting about use of force is called into question." *Id*. at 8.  In support of this argument, plaintiff cites to three ranges of UOF data to establish purported discrepancies.  *Id*.

The Court reserves decision on this issue pending briefing on the issue of the County's liability.  Extrinsic evidence is generally inadmissible to prove specific instances of a witness's conduct in order to attack credibility, FED. R. EVID. 608(b), and it is unclear at this time whether one or more of these records indicate that one of the individual defendants were untruthful.

### B. Plaintiff's Motion (Dkt. No. 122-4)

### 1. Information Unknown to Defendants at Time of the Incident (Plaintiff's Point I)

Plaintiff contends that defendants "should not be permitted to offer any evidence or testimony about what the officers, or defense counsel, learned *after* they used force on Mr. Miller-Harris."  Dkt. No. 122-4 at 7–8 (emphasis in original).  As plaintiff explains, his claims for excessive force hinge on what the officers knew and reasonably perceived at the time they acted, not on any later-acquired information.  *See id*. at 7.

In response, defendants represent that they "do not intend to elicit testimony concerning any knowledge the deputies' obtained concerning Miller-Harris after the fact (as it appears this portion of [p]laintiff's motion is targeted at this kind of testimony)."  Dkt. No. 124-3 at 33–34.  However, defendants argue that plaintiff's request is "overly broad to the extent it encompasses information beyond facts concerning Miller-Harris."  *Id*. at 34.

Plaintiff's request is granted to the extent it concerns testimony or evidence related to the uses of force at the OCJC on September 16, 2021.  The lawfulness of the individual defendants' force, and the related question of whether any individual defendant failed to intervene, hinge on what the individual defendants knew and reasonably perceived at the time of the relevant events.  *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015) (excessive force); *Tardif v. City of N.Y.*, 991

F.3d 394, 410 (2d Cir. 2021) (assault and battery); *Figueroa v. Mazza*, 825 F.3d 89, 106 (2d Cir. 2016) (failure to intervene).

    **2. Plaintiff's Convictions** (Plaintiff's Point II; Defendants' Opposition Point I)

    Plaintiff contends that defendants "should be precluded from introducing evidence" of his criminal charges or convictions for any purpose, including impeachment. Dkt. No. 122 at 8–11. Plaintiff seeks to preclude evidence of: (1) the arrest and charges that led to his detention at the OCJC; (2) his misdemeanor convictions; and (3) his felony convictions for first-degree robbery (in 2013) and second-degree assault (in 2017). *Id.*

    In response, defendants represent that they "do not plan to go into" plaintiff's charges or arrest or his misdemeanor convictions unless plaintiff "opens the door or it otherwise becomes proper." Dkt. No. 124-3 at 3 n.1. However, defendants argue that plaintiff's felony convictions are admissible under Rule 609 for impeachment. *Id.* at 3–8. According to defendants, plaintiff cannot overcome the presumption that these convictions are at least somewhat probative of his credibility, and cannot show that the prejudicial effect of this evidence substantially outweighs its probative value. *See id.*

    Plaintiff's request to preclude evidence of the arrest and charges that led to his pre-trial detention is granted. Although there are exceptions, *Rodriguez v. Village of Port Chester*, 535 F. Supp. 3d 202, 223–24 (S.D.N.Y. 2021), the general rule is that an arrest, absent a conviction, is not admissible for any purpose, including impeachment. *See, e.g.*, *Ridge v. Davis*, 639 F. Supp. 3d 465, 477 (S.D.N.Y. 2022). Neither party has articulated a reason why this general rule should not apply to preclude evidence of plaintiff's arrest and charges.

    Plaintiff's request to preclude evidence of his misdemeanor convictions is also granted. Again, while there are exceptions, *Monroe v. Town of Haverstraw*, 639 F. Supp. 3d 459, 464

(S.D.N.Y. 2022), the general rule is that a conviction for a minor crime (*i.e.*, punishable by one year or less of imprisonment), is not admissible for any purpose, including impeachment. *See, e.g.*, *Ridge*, 639 F. Supp. 3d at 475–76. Neither party has articulated a reason why this general rule should not apply to preclude evidence of plaintiff's misdemeanor convictions.

This leaves plaintiff's request to preclude evidence of his prior felony convictions for first-degree robbery (in 2013) and second-degree assault (in 2017). Plaintiff concedes that he was released from incarceration from these felony convictions within the last ten years, which makes them "presumptively available for impeachment." Dkt. No. 122-4 at 9. However, he argues that these convictions should be excluded from impeachment because they are unduly prejudicial. *Id.* at 10.

As to the 2013 robbery conviction, plaintiff argues that it is not particularly probative of his truthfulness, is relatively remote in time, and, "most importantly, presents a danger of unfair prejudice by virtue of its being a crime of force—particularly in a case alleging excessive force by officers." Dkt. No. 122-4 at 10. As to the 2017 assault conviction, plaintiff argues that this felony is not particularly probative of his credibility and presents a similar danger of prejudice "by virtue of its being a crime of force that occurred in a correctional facility." *Id.* at 10.

In opposition, defendants contend that the applicable balancing test favors the admission of the "essential facts" of plaintiff's convictions. Dkt. No. 124-3 at 3–8. Defendants emphasize that plaintiff's "credibility is crucial" in this case because his "story is so wildly different than the accounts to which [d]efendants will testify." *Id.* at 8. According to defendants, many of the concerns raised in plaintiff's brief about unfair prejudice are inapplicable because: (1) "there is no dispute that [plaintiff] was involved in a physical fight" with other detainees "minutes before

the alleged acts"; and (2) the individual defendants "are not asserting [p]laintiff initiated force against them." *Id*. at 7–8.

Rule 609 of the Federal Rules of Evidence governs a party's use of a criminal conviction for the purpose of attacking a witness's character for truthfulness. Under Rule 609(a)(1), a prior felony conviction "must be admitted" to impeach a witness's credibility in a civil case unless the probative value of the evidence is substantially outweighed by the danger of unfair prejudice.[3] Fed. R. Evid. 609(a)(1)(A). In balancing the considerations identified in Rule 609(a)(1), courts examine:

> (1) the impeachment value of the prior crime, (2) the remoteness of the prior conviction, (3) the similarity between the past crime and the conduct at issue, and (4) the importance of the credibility of the witness.

*Coleman v. Durkin*, 585 F. Supp. 3d 208, 213 (N.D.N.Y. 2022) (cleaned up). Although all four factors are relevant, "[p]rime among them is whether the crime, by its nature, is probative of a lack of veracity." *United States v. Ortiz*, 553 F.2d 782, 784 (2d Cir. 1977). Thus, while "Rule 609(a)(1) presumes that all felonies are at least somewhat probative of a witness's propensity to testify truthfully," courts must be mindful of the fact that not every felony is "equally probative of credibility." *United States v. Estrada*, 430 F.3d 606, 617 (2d Cir. 2005).

Subject to the balancing test, Rule 609(a)(1) presumptively permits an "inquiry into the 'essential facts' of the conviction, including the nature or statutory name of each offense, its date, and the sentence imposed." *Estrada*, 430 F.3d at 616. However, the court has "wide discretion to impose limitations on the cross-examination of witnesses," *United States v. Flaharty*, 295 F.3d 182, 191 (2d Cir. 2002), and may exclude "evidence of the underlying facts or details of a crime

---

[3] The presumption in favor of admissibility disappears "if more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later." Fed. R. Evid. 609(b).

of which a witness was convicted," *Estrada*, 430 F.3d at 616, including, if warranted, the names of the convictions, *Diggs v. Guynup*, 621 F. Supp. 3d 315, 320 (N.D.N.Y. 2022), and the length of the sentence imposed, *Hines v. Huff*, 2019 WL 3574246, at *2 (N.D.N.Y. Aug. 6, 2019).

Measured against this standard, the first two factors weigh against the admission of this evidence while the third and fourth factors weigh in favor of its use. First, the impeachment value of plaintiff's felonies is relatively minimal. Although crimes of theft or stealth are more likely to be probative of veracity than crimes of violence, *Estrada*, 430 F.3d at 618, the crime of robbery, like the crime of assault, "requires the use of force and has more of the characteristics of a crime of violence, which has less probative value on credibility," *Diggs*, 621 F. Supp. 3d at 321 (cleaned up). Second, these convictions are fairly remote at eight and twelve years old. *United States v. Vasquez*, 840 F. Supp. 2d 564 (E.D.N.Y. 2011) ("Remoteness is measured from the date of trial."). Conversely, the third factor favors admission because plaintiff's past crimes bear little to no similarity to the conduct at issue in this case. *See id.* (explaining risk of prejudice increases when similarity is present). And fourth, there is no question that plaintiff's credibility will be "a central issue in this case." *Diggs*, 621 F. Supp. 3d at 320.

In light of these conclusions, the "essential facts" of plaintiff's convictions are admissible for the purpose of impeachment. *Brevard v. Schunk*, 2020 WL 374563, at *2 (N.D.N.Y. Jan. 23, 2020) (permitting "the name, date, and sentence" of a conviction). However, this will be limited to: (1) the fact that plaintiff was convicted of one or more felonies; (2) the dates of those convictions; and (3) the sentences imposed.

The names of the convictions, as well as their nature or details, are not admissible because these facts have minimal additional probative value and create a significant danger of unfair prejudice. That is especially so where, as here, defendants represent that a portion of the

relevant events—including an altercation between plaintiff and the other detainees—has been captured on surveillance video. There is an increased danger of unfair prejudice if, in addition to viewing this footage, the jury hears that plaintiff committed two crimes of violence.

### 3. Plaintiff's Disciplinary History (Plaintiff's Point III)

Plaintiff contends that any references to his state or local disciplinary records should be excluded. Dkt. No. 122-4 at 11–12. In response, defendants represent that they "do not intend on offering affirmative evidence" of plaintiff's "custodial disciplinary history" but contend that this evidence should be permitted for impeachment "if the proper opportunity arises (*i.e.*, to cross examine witnesses on it if they testify falsely or inconsistently)." Dkt. No. 124-3 at 34.

Plaintiff's request is granted. Rule 608(b) prohibits the admission of extrinsic evidence "to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness." FED. R. EVID. 608(b). But the court may permit cross-examination into specific instances of a witness's conduct if they are probative of a witness's character for truthfulness. FED. R. EVID. 608(b)(1)–(2). This rule prohibits "the introduction into evidence of [plaintiff's] disciplinary records," *Eng v. Scully*, 146 F.R.D. 74, 78 (S.D.N.Y. 1993), and neither party has articulated how any aspect of plaintiff's disciplinary history—which in any event has not been made available to the Court at this time—might be probative of his credibility so as to justify inquiry for purposes of impeachment.

### 4. Non-Parties' Disciplinary Histories (Plaintiff's Point IV)

Plaintiff contends that "evidence or testimony regarding the custodial histories of any non-party witnesses" should be excluded. Dkt. No. 122-4 at 12. Plaintiff has identified Nigel David, Carl Bisnett-Hartley, Bayron Castro, Demetrius Archie, and Pedro Rodriguez-Griffin as non-party witnesses. *Id.* In response, defendants represent that they "do not intend on offering

affirmative evidence" of the non-parties' "custodial disciplinary history" but contend that this evidence should be permitted for impeachment "if the proper opportunity arises (*i.e.*, to cross examine witnesses on it if they testify falsely or inconsistently)." Dkt. No. 124-3 at 34.

Plaintiff's request is granted for substantially the reasons set forth *supra*.

### 5. Non-Parties' Convictions (Plaintiff's Point V; Defendants' Opposition Point II)

Plaintiff contends that defendants "should be precluded from introducing evidence of the criminal convictions of any non-party witnesses, or using them for impeachment, including Nigel David, Carl Bisnett-Hartley, Bayron Castro, Demetrius Archie, and Pedro Rodriguez-Griffin." Dkt. No. 122-4 at 12.[4]

In opposition, defendants contend that plaintiff's counsel "wants to have their cake and eat it too; that is, they want to call several witnesses with a rampant criminal past—a factor presumptively bearing on credibility—who will say that [plaintiff] was assaulted, but shield from the jury key background facts which would afford the jury proper context to accurately assess the veracity of the testimony." Dkt. No. 124-3 at 8–9.

As explained *supra*, Rule 609 of the Federal Rules of Evidence governs a party's use of a criminal conviction for the purpose of attacking a witness's character for truthfulness. The same set of considerations and the same four-factor balancing test applies where, as here, the witnesses are non-parties to the action. *See, e.g.*, *Coleman*, 585 F. Supp. 3d at 213.

### a. Nigel David

The parties have stipulated to use non-party witness Nigel David's deposition at trial. Dkt. No. 122-4 at 14 n.2. David is currently incarcerated for second-degree robbery and third-degree burglary. *Id*. at 14. Defendant seeks to impeach David with his felony convictions for

---

[4] The parties have submitted disputed portions of David and Bisnett-Hartley's deposition designations, which will be resolved in a separate order.

robbery and burglary (both from 2022) and with his felony conviction for fourth-degree criminal possession of stolen property (from 2016). Dkt. No. 124-3 at 9–12.

In defendants' view, these convictions pass muster under Rule 403: robbery and burglary are theft crimes that are generally probative of truthfulness, they are recent in time, and there is no allegation that David engaged in any violent conduct surrounding the events in question. Dkt. No. 124-3 at 9–10. Likewise, defendants argue that David's 2016 conviction is a theft crime that is probative of truthfulness despite the fact that it is more remote in time. *See id*. at 10–12.

In opposition, plaintiff argues that David's 2022 convictions for robbery and burglary are crimes of force, which are not particularly probative as to honesty and veracity. Dkt. No. 122-4 at 14. As to David's 2016 conviction, plaintiff argues that, "without more particulars about the crime," there is no indication that it would be particularly probative as to credibility, either. *Id*. Further, plaintiff emphasizes that this 2016 conviction is fairly remote in time, since it has been almost a decade. *Id*. at 15. Instead, plaintiff maintains that defendants should be able to specify that David "is incarcerated for a felony." *Id*.

After weighing the factors, the Court concludes that David's felony convictions qualify for admission under Rule 609(a)(1)(A), but the scope of impeachment must be limited to avoid the substantial danger of unfair prejudice. Robbery and burglary are crimes of violence that are not particularly probative of credibility. *See Hartman v. Snelders*, 2010 WL 11626508, at *12 (E.D.N.Y. Jan. 28, 2010) (collecting cases). And while David's conviction for possession of stolen property *sounds* like a theft crime, there is nothing in the current record to show that it actually *involved* a theft, let alone deceit or dishonesty. *Monroe*, 639 F. Supp. 3d at 464 ("Mere possession of stolen property may or may not involve theft . . . .").

Instead, the "essential facts" of David's convictions are admissible for the purpose of impeachment. This is limited to: (1) the fact that David was convicted of one or more felonies; (2) the dates of those convictions; (3) the sentences imposed; and (4) the fact that David was incarcerated at the time of his deposition. The statutory names of the felonies, as well as their underlying nature or details, are not admissible.

### b. Carl Bisnett-Hartley

The parties have stipulated to use non-party witness Carl Bisnett-Hartley's deposition at trial. Dkt. No. 122-4 at 16 n.3. Bisnett-Hartley is currently incarcerated for second-degree criminal possession of a weapon. *Id*. at 16. Defendants seek to impeach Bisnett-Hartley with his convictions for criminal possession of a weapon (in 2022) and third-degree grand larceny (from 2020). Dkt. No. 124-3 at 12–13.

Briefly stated, defendants argue that the Rule 403 balancing test favors admission of this impeachment evidence. *See* Dkt. No. 124-3 at 12–13. In opposition, plaintiff contends that defendants should be precluded from "any mention of the underlying crimes or details" because these are crimes are not particularly probative of credibility. Dkt. No. 122-4 at 16.

The Court agrees. Although both convictions are relatively recent, neither the criminal possession of a weapon (which is a crime of violence) nor larceny (which is a theft offense but does not include an element of dishonesty or deceit), absent more, are particularly probative of a witness's credibility. *Thousand v. Corrigan*, 2017 WL 4480185, at *6 (N.D.N.Y. Oct. 6, 2017) (finding larceny "moderately probative of credibility"); *Espinosa v. McCabe*, 2014 WL 988832, at *5 (N.D.N.Y. Mar. 12, 2014) (finding weapons possession "not particularly probative as to honesty or veracity"); *but see Estrada*, 430 F.3d at 621 (opining court "perhaps should have" admitted larceny convictions). Accordingly, the "essential facts" of Bisnett-Hartley's felony

convictions are admissible for the purpose of impeachment. This will be limited to: (1) the fact that Bisnett-Hartley has been convicted of one or more felonies; (2) the dates of the convictions; (3) the sentences imposed; (4) the fact that Bisnett-Hartley was incarcerated at the time of his deposition; and (5) the fact that one of the felonies is for larceny. The statutory names of the other felonies, as well as the nature or details of any of the felonies, are not admissible.

### c. Demetrius Archie

Non-party witness Demetrius Archie is currently incarcerated for second-degree criminal possession of a weapon. Dkt. No. 122-4 at 16. Defendants seek to impeach Archie with his two felony convictions for criminal possession of a weapon (in 2022) and his conviction for second-degree assault (from 2013). Dkt. No. 124-3 at 13.

As defendants explain, Archie was one of the participants in the incident at OCJC that led to the uses of force against plaintiff. Dkt. No. 124-3 at 13. Although defendants acknowledge that Archie's assault conviction is factually similar to the underlying events, they maintain that this conviction remains admissible for impeachment because Archie is not the plaintiff and he was not involved in defendants' alleged uses of force. *Id*. Defendants emphasize that Archie's "assaultive conduct" at OCJC is captured on surveillance footage. *Id*.

In opposition, plaintiff contends that Archie's convictions "have minimal probative value as to honesty or veracity." Dkt. No. 122-4 at 16. With respect to Archie's assault conviction in particular, plaintiff argues that it should be held inadmissible because it is minimally probative, remote in time, and presents a danger of unfair prejudice, since Archie was involved in the fight at OCJC that led to defendants' response. *Id*. at 17. In plaintiff's view, defendants should be limited to inquiring about whether Archie is "currently incarcerated for a felony." *Id*.

The Court agrees in part. These are crimes of violence that are not particularly probative of a witness's credibility. If anything, the fact that the fight is captured on video cuts against the need to inquire deeply into Archie's assault conviction (which is fairly remote in time). Instead, the "essential facts" of Archie's felony convictions are admissible for impeachment. Again, this is limited to: (1) the fact that Archie has been convicted of one or more felonies; (2) the dates of those convictions; (3) the sentences imposed; and (4) the fact that Archie is incarcerated. The statutory names of Archie's felony convictions, and their nature or details, are not admissible.

### d. Bayron Castro

Non-party Bayron Castro is currently incarcerated for first-degree criminal possession of a controlled substance. Dkt. No. 122-4 at 17. Defendants seek to impeach Castro with his two felony convictions for first-degree criminal possession of a controlled substance (in 2024) and third-degree criminal possession of a controlled substance (in 2018). Dkt. No. 124-3 at 13.

In opposition to the admission of Castro's convictions, plaintiff argues that other courts have held that drug convictions have relatively low impeachment value. Dkt. No. 122-4 at 17. In response, defendants argue that plaintiff's argument fails to account for the fact that courts in this district have found drug felonies admissible for impeachment under Rule 609(a)(1). *Id.*

After balancing the factors, the Court concludes that the inquiry into Castro's convictions should be limited on impeachment. First, defendants' citation to *Hardy v. Adams*, 654 F. Supp. 3d 159 (N.D.N.Y. 2023), is at least somewhat distinguishable. In *Hardy*, which is an excessive force case, the defendants sought to cross-examine the plaintiff, rather than a non-party witness, on his prior drug conviction. *Id.* at 167. Although Chief Judge Sannes noted that drug crimes are generally not probative of veracity, and even though this particular drug conviction was fairly

remote in time, she concluded that the impeachment value of this felony outweighed the danger of unfair prejudice because the plaintiff's veracity was a "central issue" in the case. *Id*.

Defendants emphasize that *Hardy* was about the impeachment value of a drug conviction against the plaintiff himself. Thus, in their view, *Hardy*'s rationale should apply with equal if not greater force to a non-party witness like Castro. But this distinction cuts the other way. The *Hardy* plaintiff's felony drug conviction held sufficient impeachment value, notwithstanding its prejudicial effect, because the plaintiff's credibility was central to his case. That is not true here, where Castro is merely one of several eyewitnesses to the alleged events. And while one of the convictions is recent, drug convictions—old or new—are ordinarily only minimally probative of veracity. *See, e.g.*, *United States v. Puco*, 453 F.2d 539, 542 (2d Cir. 1971).

The balancing test applied to Castro's convictions confirms that while one is recent, the other is more remote; both are of minimal probative value; they are dissimilar from the conduct at issue; and there is no indication that the testimony is of particular importance, especially in light of defendants' representations that much of the encounter is caught on video. Instead, the "essential facts" of Castro's felony convictions are admissible for impeachment. This will be limited to: (1) the fact that Castro has been convicted of one or more felonies; (2) the dates of those convictions; (3) the sentences imposed; and (4) the fact that Castro is incarcerated. The statutory names of Castro's convictions, and their nature or details, are not admissible.

### e. Pedro Rodriguez-Griffin

Defendants seek to impeach non-party Pedro Rodriguez-Griffin with his 2016 felony conviction for second-degree rape. Dkt. No. 122-4 at 14. Although defendants concede that the crime of rape "does not inherently involve dishonesty," they maintain this conviction is less than ten years old and assert that Rodriguez-Griffin's credibility is "highly important" given that he

was housed in "close proximity" to plaintiff at OCJC on the evening in question. *Id*. at 14–15. In opposition, plaintiff argues that "rape is not particularly probative as to honesty or veracity" and claims the "prejudicial effect of this serious crime is self-evident." Dkt. No. 122-4 at 17–18.

Application of the balancing test compels the conclusion that inquiry into the felony rape conviction should be limited. Sexual abuse crimes "are not particularly probative as to honesty and veracity." *Thomas v. Leifeld*, 2018 WL 3387690, at *2 (N.D.N.Y. July 12, 2018) (collecting cases). The conviction is relatively remote in time; there is a serious danger that the jury would have an emotional response to the word "rape"; and Rodriguez-Griffin's testimony will offer one of several perspectives to the event. Instead, the "essential facts" of Rodriguez-Griffin's felony conviction will be admissible for impeachment. This is limited to: (1) the fact that Rodriguez-Griffin has been convicted of a felony; (2) the date of the conviction; (3) the sentence imposed. The statutory name of Rodriguez-Griffin's conviction, as well as the nature or details of the crime, are not admissible.

### 6. Awards or Commendations (Plaintiff's Point VI)

Plaintiff contends that defendants "and any other law enforcement witnesses" should be precluded from discussing "awards and commendations that they have received throughout their career relating to acts of purported bravery, valor, etc." because "such testimony is irrelevant to any issue at trial, represents impermissible propensity evidence . . . , and is inadmissible hearsay and otherwise unduly prejudicial." Dkt. No. 122-4 at 18–19. In response, defendants represent that they "do not intend to affirmatively elicit testimony" about "awards, commendations, etc." unless plaintiff "opens the door requiring [d]efendants to rehabilitate the witnesses." Dkt. No. 124-3 at 34.

"Character evidence" is generally inadmissible in civil cases "to prove that on a particular occasion the person acted in accordance with the character or trait." FED. R. EVID. 404(a)(1). "The rationale behind this rule is the notion that this evidence has slight probative value but has a tendency to be highly prejudicial or to confuse the issues." *Cohn v. Papke*, 655 F.2d 191, 194 (9th Cir. 1981). Although there are cases in which a character trait is an element of a claim or defense, FED. R. EVID. 405(b), and situations in which "other-acts" evidence can be used for a non-propensity purpose, FED. R. EVID. 404(b), it is "well established . . . that absent an attack on the veracity of a witness, no evidence to bolster his credibility is admissible." *United States v. Arroyo-Angulo*, 580 F.2d 1137, 1146 (2d Cir. 1978).

"Character evidence encompasses evidence of a defendant's prior commendations and awards." *United States v. Brown*, 503 F. Supp. 2d 239, 242 (D.D.C. 2007). This information is not "'background evidence' because the only purpose for offering such information would be to portray a defendant in a positive light by demonstrating recognition of certain character traits or actions that demonstrate such character traits." *Id*.

Measured against these standards, plaintiff's request is granted. Courts routinely exclude evidence of award, commendations, and certificates showing good character. *See, e.g.*, *Reeder v. Bishop*, 2019 WL 3732050, at *7 (N.D.N.Y. Aug. 8, 2019) (collecting cases). To the extent that defendants may seek to introduce or use any of this evidence for the purpose of rehabilitating a witness, the Court reserves decision on that issue until it can be placed into context at trial.

**7. Defendants' Experts** (Plaintiff's Point VII; Defendants' Opposition Point III)

Defendants intend to call as experts: (1) retired sheriff Gerry D. Billy and (2) neurologist Dr. Robert Knapp. Dkt. No. 114 at 7.

Federal Rule of Evidence 702 permits "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" to "testify in the form of an opinion or otherwise" if the proponent can demonstrate that: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied those principles and methods to the facts of the case." FED. R. EVID. 702.

"The law assigns district courts a 'gatekeeping' role in ensuring that expert testimony satisfies the requirements of Rule 702." *United States v. Farhane*, 634 F.3d 127, 158 (2d Cir. 2011), *cert. denied,* 565 U.S. 1088 (2011). Broadly speaking, this gatekeeping role requires the court to evaluate three criteria before permitting a person to testify as an expert: (1) the witness's qualifications; (2) the opinion's reliability; and (3) whether the testimony on that particular issue will assist the trier of fact. *See, e.g.*, *Nimely v. City of N.Y.*, 414 F.3d 381, 396–97 (2d Cir. 2005).

First, the witness must be qualified to testify by virtue of "knowledge, skill, experience, training, or education." FED. R. EVID. 702. This is a disjunctive test that considers the totality of the witness's expert qualifications. *See, e.g.*, *Tiffany (NJ) Inc. v. eBay, Inc.*, 576 F. Supp. 2d 457, 458 (S.D.N.Y. 2007) (opining that "any one of these five forms of qualifications will satisfy the rule"). "To determine whether a witness qualifies as an expert, courts compare the area in which the witness has superior knowledge, education, experience, or skill with the subject matter of the proffered testimony." *United States v. Tin Yat Chin*, 371 F.3d 31, 40 (2d Cir. 2004).

Second, the opinion must be reliable. *See* FED. R. EVID. 702. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court set forth a non-exhaustive list of factors that bear on this reliability inquiry: "(1) whether a theory or technique has been or can be

tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the technique's known or potential rate of error and the existence and maintenance of standards controlling the technique's operation; and (4) whether a particular technique has gained general acceptance in the relevant scientific community." *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007).

In *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), the Supreme Court extended this inquiry to expert testimony that is based on technical or other specialized knowledge. "In such cases, where a proposed expert witness bases her testimony on practical experience rather than scientific analysis, courts recognize that '[e]xperts of all kinds tie observations to conclusions through the use of what Judge Learned Hand called 'general truths derived from . . . specialized experience.'" *Davis v. Carroll*, 937 F. Supp. 2d 390, 412 (S.D.N.Y. 2013) (quoting *Kumho Tire Co.*, 526 U.S. at 149–50).

In other words, this reliability inquiry is a "flexible" one, *Daubert*, 509 U.S. at 594, and the *Daubert* factors should not be mistaken for a "definitive checklist or test." *Kumho Tire Co.*, 526 U.S. at 150. Instead, because this inquiry is tied to the facts of a particular case, *id*. at 151, this factor "may instead focus upon personal knowledge and experience of the expert." *Chery v. Conduent Educ. Servs., LLC*, 581 F. Supp. 436, 447 (N.D.N.Y. 2022) (cleaned up). Consistent with this flexible, fact-specific inquiry, an expert must stay within the reasonable confines of the scope of their expertise. *See id*.; *see also Davis*, 937 F. Supp. 2d at 413 ("[T]he admission of an expert does not provide that individual with carte blanche to opine on every issue in the case.").

Third, the expert's testimony must "help the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702(a). "This is essentially a relevance standard," since "[e]xpert testimony which does not relate to any issue in the case is not relevant and, ergo, non-

helpful." *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 n.5 (2d Cir. 1997 (quoting *Daubert*, 509 U.S. at 591). The Second Circuit has "consistently held that expert testimony that usurps either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it by definition does not aid the jury in making a decision" because it "undertakes to tell the jury what result to reach." *Nimely*, 414 F.3d at 397 (cleaned up).

The proponent of the testimony bears the burden of "establishing by a preponderance of the evidence that the admissibility requirements of Rule 702 are satisfied." *Williams*, 506 F.3d at 160. However, the Second Circuit has held that "*Daubert* reinforces the idea that there should be a presumption of admissibility of evidence." *Borawick v. Shay*, 68 F.3d 597, 610 (2d Cir. 1995).

In other words, "the rejection of expert testimony is the exception rather than the rule." FED. R. EVID. 702 advisory committee's note. Thus, "[t]o the extent that a party questions the weight of the evidence upon which the other party's expert relied or the conclusions generated from the expert's assessment of that evidence, it may present those challenges through cross-examination of the expert." *Chery*, 581 F. Supp. 3d at 448 (quoting *R.F.M.A.S., Inc. v. So*, 748 F. Supp. 2d 244, 252 (S.D.N.Y. 2010).

Ultimately, a judge should exclude expert testimony "if it is speculative or conjectural or based on assumptions that are so unrealistic and contradictory as to suggest bad faith or to be in essence an apples and oranges comparison." *Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC*, 571 F.3d 206, 213 –14 (2d Cir. 2009) (cleaned up); *see also Nimely*, 414 F.3d at 397 (cautioning that expert testimony remains subject to Rule 403).

### a. Billy

Billy is an expert in the field of "corrections and jail management." Dkt. No. 114 at 7. According to defendants, Billy "will opine all actions of the sworn staff were commensurate with

standard corrections training, procedures and practices, and were properly deployed to maintain safety and security." *Id*.

Plaintiff contends that Billy should not be permitted to: (1) testify to a factual narrative, which would usurp the role of the witnesses; (2) offer his opinion about the credibility of other witnesses, which would usurp the role of the jury; or (3) provide an opinion on the ultimate issue in the case, *i.e.*, whether defendants used excessive force.  Dkt. No. 122-4 at 19–20.  According to plaintiff, Billy's "testimony should be extremely limited or excluded in its entirety" because "very few of the opinions" in his report "would be permissibly expert testimony."  *Id*. at 22.

In response, defendants represent that Billy will not: (1) "offer a factual narrative or rehash the deputies' testimony"; (2) "offer opinions on the credibility of witnesses" or "tell the jury it should disbelieve (or believe) any witnesses"; or (3) "improperly testify as to 'ultimate conclusions.'"  Dkt. No. 124-3 at 18–19.  Defendants explain that Billy "will testify regarding technical terms and information outside the common knowledge of laypersons," including "the force techniques employed by the deputies which are trained maneuvers in corrections and opine that the actions and techniques used were consistent with widespread standards and practices" and that "consistent with his report," he will also "opine, to a reasonable degree of professional certainty in his field, that the deputies at all times acted in accordance with standard corrections practices, training, procedure, and technique."  *Id*. at 18–19.

Plaintiff's motion is granted in part and denied in part.  Plaintiff's motion is denied to the extent that he seeks to preclude Billy's testimony "in its entirety."  However, plaintiff is correct that Billy's testimony must be limited in the following ways, and may be further limited at trial depending on what testimony, exactly, defendants seek to elicit from this witness.

First, Billy cannot testify to a fact narrative because he has no personal knowledge of the underlying facts, which are "lay matters that the jury is capable of understanding and deciding without [his] testimony." *Highland Cap. Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 180 (S.D.N.Y. 2008); *see also Sec. & Exch. Comm'n v. Tourre*, 950 F. Supp. 2d 666, 75 (S.D.N.Y. 2013) ("Acting simply as a narrator of the facts does not convey opinions based on an expert's knowledge and expertise; nor is such narration traceable to a reliable methodology.").

Second, Billy cannot testify about the credibility of witnesses. "[E]xpert opinions that constitute evaluations of witness credibility, even when such evaluations are rooted in scientific or technical expertise, are inadmissible under Rule 702." *Nimely v. City of N.Y.*, 414 F.3d 381, 400 (2d Cir. 2005). This limitation extends to testimony that may be repackaged as an expert conclusion formed by assessing the credibility of other witnesses. *United States v. Scop*, 846 F.2d 135, 42 (2d Cir.), *modified on rehearing*, 856 F.2d 5 (2d Cir. 1988); *see also Tennyson v. Francemone*, 2024 WL 3398364, at *10 (N.D.N.Y. July 12, 2024) (collecting cases excluding expert testimony "to the extent that such testimony is based, either implicitly or explicitly, on a determination of the credibility of any witness").

Third, Billy cannot testify to a legal conclusion. *See, e.g.*, *Hygh v. Jacobs*, 961 F.2d 359, 363 (2d Cir. 1992) ("This circuit is in accord with other circuits in requiring exclusion of expert testimony that expresses a legal conclusion."); *see also* Fed. R. Evid. 704 advisory committee's note (explaining that "abolition of the ultimate issue rule does not lower the bars so as to admit all opinions"). When an expert intends to offer an opinion relevant to the application of a legal standard, "the expert's role is limited to describing sound professional standards and identifying departures from them." *Restivo v. Hessemann*, 846 F.3d 547, 580 (2d Cir. 2017) (quoting *Jimenez v. City of Chicago*, 732 F.3d 710, 721 (7th Cir. 2013)); *see also Tennyson*, 2024 WL

3398364, at *11 (limiting police practices expert to testimony about "training and practices and whether a hypothetical account of the facts is consistent with such training and practices").

### b. Dr. Knapp

Dr. Knapp is a medical expert.  Dkt. No. 114 at 7.  According to defendants, Dr. Knapp "will opine Plaintiff's alleged injuries were not caused by Defendants' alleged conduct, and that Plaintiff . . . has experienced longstanding psychogenic non-epileptic spells (not epileptic seizures) due to various psychiatric and other comorbidities, and did not sustain a traumatic brain injury on the night in question."  *Id.* at 7–8.

Plaintiff contends that Dr. Knapp should not be permitted to: (1) "go into detail regarding any specific instances of [p]laintiff's past drug use"; (2) testify about plaintiff's "grandiosity, depression, and mild homicidal ideations" because these diagnoses "post-date the September 16, 2021 incident at issue in this case"; and (3) testify in a way that conflates plaintiff's psychiatric diagnoses with the symptoms of those conditions.  Dkt. No. 122-4 at 22–23.

In response, defendants represent that Dr. Knapp should be permitted to: (1) testify about plaintiff's history of drug use because "it is proof relevant to damages and the alleged injuries"; (2) testify about plaintiff's post-incident psychiatric conditions because this testimony tends to show "the underlying comorbidities which 'are likely to cause an individual involved in a violent jail fight with several other inmates (such as Mr. Miller-Harris to experience a psychogenic-based pseudoseizure event'" and are relevant to "the nature and etiology of [p]laintiff's alleged seizure disorder."  Dkt. No. 124-3 at 22–27.  According to defendants, plaintiff's "pre- and post-incident psychiatric history is [ ] probative of his damages claim" and relevant to Dr. Knapp's opinions about "the nature and etiology of his alleged seizure condition."  *Id.* at 27.

Plaintiff's motion is granted in part and denied in part without prejudice to renew, to the extent it might become necessary, at trial. First, Dr. Knapp will not be permitted to testify about specific instances of plaintiff's past drug use. This testimony would be seriously prejudicial, of almost no probative value, and is likely to confuse or mislead the jury about the relevant facts in dispute in this case. *See, e.g.*, *Goss v. Sealift, Inc.*, 2024 WL 670405, at *2 (E.D.N.Y. Jan. 17, 2024) (explaining drug use cannot be used to attack general credibility but may be appropriate to challenge value of a percipient witness); *Castro v. Smith*, 2024 WL 69196, at *2 (S.D.N.Y. Jan. 5, 2024) (excluding the plaintiff's history of cocaine use because it was "unduly prejudicial and will only confuse the jury"). However, Dr. Knapp may testify that plaintiff's medical history includes evidence of substance abuse provided that defendants establish its relevance to damages and/or causation. *See Fletcher v. City of N.Y.*, 54 F. Supp. 2d 328, 334 (S.D.N.Y. 1999).

Second, Dr. Knapp may testify about plaintiff's post-incident diagnoses because this expert testimony may rebut or mitigate damages. Dkt. No. 124-3 at 27; *cf. Minskoff v. Mendoza*, 2025 WL 2505472, at *5 (E.D.N.Y. Sept. 1, 2025) ("Because plaintiff has put her psychiatric status at issue in this case, defendant will be permitted to submit evidence, through Dr. Walker, that he was not the cause of plaintiff's psychological injuries and mental anguish."). Third, Dr. Knapp cannot testify in a way that conflates plaintiff's symptoms with any psychiatric diagnosis. In fact, the parties appear to agree on this point. *Compare* Dkt. No. 122-4 at 23, *with* Dkt. No. 124-3 at 25.

**8. Plaintiff's Medical History** (Plaintiff's Point VIII; Defendants' Opposition Point IV)

Plaintiff contends that: (1) "to the extent any of the [d]efendants claims to have known about [p]laintiff's past drug use prior to their use of force they should not be allowed to testify about it, for its prejudicial nature outweighs any potential probative value"; (2) "other than Dr.

Knapp's testimony, evidence or other testimony regarding the specifics of [p]laintiff's history of drug use should be precluded as unduly prejudicial"; and (3) defendants should be precluded from using certain records that were not disclosed in discovery.  Dkt. No. 122-4 at 24–26.

In response, defendants represent that: (1) "the deputies will not testify concerning [p]laintiff's drug use, so this is a moot point"; (2) they "should be permitted to utilize any records concerning [plaintiff's] drug or psychiatric history/conditions, as this evidence is relevant to Dr. Knapp's opinions and the damages claim"; and (3) there is no prejudice from the late disclosure because plaintiff has been on notice of the records at issue, defendants sent plaintiff's counsel a revised disclosure over one month before trial, and many of the records are duplicative.  Dkt. No. 124-3 at 28–30.

Plaintiff's motion is granted in part and denied in part without prejudice to renew.  First, plaintiff's request to preclude the individual defendants from testifying that plaintiff engaged in drug use will be granted.  Plaintiff represents that there "has never been an allegation or claim that [plaintiff] was using or on drugs prior to the incident—in fact, he tested negative for alcohol and drugs throughout his hospitalization after the September 16, 2021 incident."  Dkt. No. 122-4 at 25.  And defendants have represented that they do not intend to do so.  Dkt. No. 124-3 at 28.

Second, plaintiffs' request to preclude defendants from using evidence or other testimony regarding the specifics of his drug use history is granted in part.  As explained *supra*, defendants may be permitted to use these records in connection with Dr. Knapp's testimony, subject to an appropriate basis at trial.  Defendants, for their part, appear to recognize as much.  Dkt. No. 124-3 at 28.

Third, the Court reserves decision on plaintiffs' request to preclude defendants from using certain records that were not disclosed in discovery.  As noted *supra*, defendants have

represented that they do not intend to inquire into the details of these records, including the specific details of plaintiff's substance use history.  Plaintiff is correct that these medical records are not admissible in evidence merely because defendants' expert reviewed them.  Dkt. No. 126 at 8–9.  And there is a real danger that admission of these records would only serve to confuse the jury about the issues.

The parties are directed to continue to confer on this issue.  An unresolved objection will be dealt with at trial, and the Court will consider a proposed limiting instruction if necessary.

## 9.  Special Interrogatories (Plaintiff's Point IX)

Plaintiff contends that, to the extent that defendants intend to submit proposed special interrogatories on the issue of qualified immunity, they must do so in advance of trial.  Dkt. No. 122-4 at 26.  In response, defendants represent that they "will not wait until the close of evidence before submitting special interrogatories if they are appropriate" and that, instead, they "will do so prior to trial."  Dkt. No. 124-3 at 34.

"Qualified immunity protects government officials from civil damages liability 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Jones v. Treubig*, 963 F.3d 214, 224 (2d Cir. 2020) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).  "Special interrogatories are vehicles to allow the jury to resolve 'key factual disputes' bearing on the legal determination of qualified immunity."  *Alla v. Verkay*, 979 F. Supp. 2d 349, 370 (E.D.N.Y. 2013) (quoting *Cowan ex rel. Estate of Cooper v. Breen*, 352 F.3d 756, 765 (2d Cir. 2003)).  "[T]he use of interrogatories is a matter for the judge's discretion."  *Stephenson v. Doe*, 332 F.3d 68, 81 n.19 (2d Cir. 2003).  "To the extent that a particular finding of fact is essential to a determination by the court that the defendant is entitled to qualified immunity, it is the responsibility of the defendant to request that

the jury be asked the pertinent question." *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007).

Plaintiff's request is granted consistent with defendants' representation to the Court that they will propose special interrogatories before trial commences or not at all.

### 10. Indemnification (Plaintiff's Point X)

Plaintiff contends that defendants should be precluded "from suggesting or implying that they will have to pay any judgment in this case." Dkt. No. 122-4 at 27. Defendants have not opposed this request. Accordingly, plaintiff's motion is granted.

### 11. Data Visualization Charts (Plaintiff's Point XI; Defendants' Opposition Point V)

Plaintiff contends that he should be permitted to introduce into evidence the UOF data discussed *supra*. Dkt. No. 122-4 at 28–30. As plaintiff explains, he compiled this data from the 369 incident reports that involved the individual defendants' use of force at OCJC. *Id*. at 28. In particular, plaintiff seek to: (1) modify the protective order covering this material so that it may be shown to the jury; (2) admit the underlying evidence under the business records exception; and (3) introduce into evidence a data visualization chart that summarizes this voluminous UOF data for the jury. *Id*. at 29–30.

In opposition, defendants represent that (1) they are willing to confer with plaintiff about declassifying this material; and (2) they have stipulated to the foundation and authenticity of this material. Dkt. No. 124-3 at 31. However, defendants argue that this evidence is irrelevant and unfairly prejudicial because the negligence claim against the County—for which this evidence is relevant—is not legally viable. *Id*. at 32.

The Court reserves decision on this issue pending the supplemental briefing on the issue of the County's liability, as set forth *supra*.

### 12. **Personal Identifiers** (Plaintiff's Point XII)

Plaintiff contends that defendants should be required to redact any personal identifying information from any medical records that might be introduced at trial in accordance with Local Rule 5.2. Dkt. No. 122-4 at 30. Defendants have not opposed. Accordingly, plaintiff's motion is granted.

### 13. **Conflict Waivers** (Plaintiff's Point XIII)

Plaintiff contends that the Court should require defendants to submit written conflict waivers regarding joint representation with respect to defendants Hujdur and Quigley, who were added to the litigation when plaintiff amended his pleading. Dkt. No. 122-4 at 31. In response, defendants represent that they "will submit written confirmation of conflict waiver[s] . . . prior to trial." Dkt. No. 124-3 at 34. Accordingly, plaintiff's motion is granted. *See Dunton v. Suffolk County*, 729 F.3d 903 (2d Cir. 1984). Defendants are directed to file these waivers in the same manner that has been previously ordered by the assigned magistrate judge.

### C. **Plaintiff's Supplemental Motion** (Dkt. No. 132)

Plaintiff requests that non-party incarcerated witnesses Archie and Castro should "be permitted to appear before the jury without restraints." Dkt. No. 132. In plaintiff's view, forcing a witness to appear before the jury in visible restraints may undermine the witness's credibility and should only be required when necessary to maintain order. *Id*. According to plaintiff, they conferred with defendants, who have no objection to this request. *Id*.

This motion is granted. Consistent with its standard practice, the Court intends to move incarcerated witnesses into and out of the courtroom, as well as to and from the witness stand, outside the presence of the jury. However, this ruling remains subject to security considerations,

including those that might be identified by the transport officers who remain responsible for the custody of these witnesses.

## IV.    CONCLUSION

Therefore, it is

ORDERED that

1.  Plaintiff's second, sixth, and eighth causes of action are DISMISSED;

2.  Defendant Thomas Fodaro is DISMISSED as a defendant;

3.  The Doe defendants are DISMISSED;

4.  The motions *in limine* (Dkt. Nos. 115, 122, 132) are GRANTED in part and DENIED in part as set forth *supra*;

5.  The parties shall submit supplemental briefing on the issue of the County's liability on or before Friday, October 31, 2025, at 5:00 p.m.;

6.  The parties shall submit an updated joint pre-trial stipulation, as well as any amended exhibit lists, on or before Friday, October 31, 2025, at 5:00 p.m.; and

7.  The parties shall submit a proposed limiting jury instruction regarding the individual defendants' absence from trial on or before Friday, October 31, 2025, at 5:00 p.m.

IT IS SO ORDERED.

Dated:   October 29, 2025
         Utica, New York.

Anthony J. Brindisi
U.S. District Judge